G. W. AND ELLIS WRIGHT V. THE STATE.

*No. 1234.    Decided May 12th, 1897.*

37  627
f38  285

1. **Former Acquittal—Plea of When, and When Not, to be Submitted to Jury—Practice.**

Upon a plea of former acquittal, where the offenses charged in different indictments are so diverse as not to admit proof that they are the same, the court may decide the issue without submitting it to the jury; but, when the two indictments are of such a character that they are susceptible of being shown to be the same transaction, the truth of the plea is a question for the jury and not for the court.

2. **Theft of Horses—Former Acquittal and Conviction.**

Upon the plea of former acquittal, where it appeared that two horses, belonging to different owners, were taken by defendant at the same time and place. Held: That an acquittal for the taking of one of the horses, would not be a bar to a prosecution for the taking of the other horse. The rule would be different in a case of former conviction, where the doctrine of carving applies, and the State will not, in such case, be permitted to punish twice for the same offense.

3. **Continuance, to Prove Good Character.**

A continuance will not be granted for absent witnesses who are only expected to prove the good character of defendant for honesty.

4. **Continuance.**

An application for continuance will not be granted for a witness to prove what a main State's witness, whose name is not stated, told him as to declarations and statements made by defendants when they were first arrested.

5. **Same.**

A motion for continuance and a motion for new trial based upon the overruling of the same, are both properly overruled where it is apparent that the proposed absent testimony is probably not true, or, if true, where it could not have been regarded as a defense to the charge of theft in question.

6. **Evidence—Remarks of Third Party.**

Remarks of a third party as to the condition of the defendants on the night of the alleged theft, are not res gestæ, nor admissible in evidence.

7. **Theft—Intoxication—Intent.**

Even if it be conceded, independently of our statute, that intoxication would or could afford any evidence of a want of criminal intent in a case of theft, it is certainly no defense where, in addition to the fact that it raises no issue of insanity, it fails to show that the parties did not understand the nature and character of the act they were committing, and were not capable of forming the intent to steal.

8. **Same—Charge—Circumstantial Evidence.**

On a trial 1or theft of horses, where the defendants' confession has been proven, and a witness has sworn that he saw defendants take the horses; a charge on circumstantial evidence is not called for.

9. **Theft—Joint Defendants—Confession by One—Silence as Evidence.**

On a trial of two joint defendants for the theft of horses, where one of them, after their arrest, and in the absence of the other and after the officer had warned him, made a voluntary confession to the officer, establishing the guilt of both himself and codefendant and thereafter said defendant made the same statements in the presence of his codefendant and his codefendant said nothing. Held: The warning given to the defendant who confessed, would not bind his codefendant; and the silence of the codefendant when the statements were repeated in his presence, could not be used against him, he himself being in arrest and unwarned.

APPEAL from the District Court of Kaufman.    Tried below before Hon. J. E. DILLARD.

Appeal from a conviction for theft of horses; penalty, imprisonment of each defendant for five years in the penitentiary.

This prosecution was for the theft of a horse, the property of one J. B. Ward. These same parties had been indicted jointly for the theft of a horse belonging to Jim Towson, which had been taken at the same time as the Ward horse in question; and, upon trial for the theft of the Towsen horse, they had been acquitted. They pleaded this former acquittal, for the theft of the Towsen horse, in bar of this prosecution for the theft of the Ward horse, on the ground that the two alleged takings and thefts were but one and the same transaction. On motion of the prosecuting attorney, the court struck out this plea of former acquittal and defendants were denied the right to introduce evidence in support thereof. Defendants also made an application for continuance which was overruled, and an exception saved by a bill. This matter is sufficiently elucidated in the opinion.

The horse in question and the horse of Towsen, had been ridden by the owners, at night, to a church near the village of Kemp, twelve miles south of Kaufman city. They were stolen that night. They were recovered by an officer. John Canady saw defendants get on the horses and ride off. The officers recovered the horses in the pasture of the widow Turner, near Able Springs, more than twelve miles north of Kaufman city; and defendants were arrested while in the act of feeding the horses, which were staked in the pasture. Henderson, a deputy sheriff, testified, that after defendants had been in jail at Kaufman, the larger one, G. W. Wright, was brought down to his house, at night, by a constable. That after he had warned the said G. W. Wright, he, Wright, told him that they got the horses at Kemp and thought they would go up towards the nation and pick cotton. The witness says: "He never did state they stole the horses. After he had told me all this, I brought him on from my house, and I met his brother near the jail in charge of Mr. Crane, and then we stopped and the young man kept on talking and repeating the same thing in the presence of his brother. I did not warn his brother."

The defendants proved by their witnesses that they were in the village of Kemp on the night the horses were taken; that they had been drinking—some of the witnesses say they were drunk. That they were with a party of young men, that the party wanted more liquor; that defendants proposed to go for it if they had anything to ride. That some strange boys in the crowd told them, if they would go after the whiskey to Kaufman and divide with them, they would find horses to ride after it, and, the parties then went down in the direction of the church. Will Canady testified: "That he met the boys, and they said they were going to Kaufman for more whiskey, and he gave them an order on Patterson for two quarts, and waited at Kemp, but they never came back."

The charge of the court as to the confession of one of the defendants, is copied in full in the opinion. The court charged, in effect, that in-

toxication, from the recent use of ardent spirits, could not be considered unless it amounted to that degree of drunkenness as would produce temporary insanity, in which event the temporary insanity could be considered in mitigation of the penalty.

Defendants refused special instruction was as follows: "You are instructed, however, that in all offenses in which a specific intent, such as a fraudulent taking of property with the intent of permanently appropriating it to the use and benefit of the person taking, you may consider the condition of the mind as influenced by the recent use of intoxicating liquor, in connection with all the other facts in proof, in reaching the conclusion as to whether the necessary elements of guilt existed, as defined in the main charge herein, at the time of the taking."

*J. S. Woods* and *Gossett & Young*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellants were jointly indicted and tried and convicted for the theft of a horse, and the punishment of each assessed at confinement in the penitentiary for a term of five years; hence this appeal. Appellants filed and presented a plea of former acquittal. On motion of the State, this was stricken out, and the court refused to hear testimony thereon, and this is assigned as error. Appellants were jointly indicted in this case for theft of a certain horse, the property of, and from the possession of, one J. B. Ward. The plea of jeopardy or former acquittal shows an indictment of the same defendants for theft of a horse, the property of, and from the possession of, Jim Towsen. Appellants insist that the action of the court in striking out said plea was error, and cite us to the following cases: Wilson v. State, 45 Texas, 77; Grisham v. State, 19 Tex. Crim. App., 504; Troy v. State, 10 Tex. Crim. App., 319. We have examined said cases, and none of them are in point. In Wilson's case there was a conviction, and not an acquittal, and, besides, the pleadings in that case showed one and the same transaction; or, in other words, the two indictments were of such a character that they were susceptible of being shown to be the same transaction. The rule is that, where such is the case, it is a question for the jury, and not for the court. If, however, the offenses as charged in the two indictments show upon their face that they are legally distinct and incapable of identification by averments, they are separate offenses, and are not capable of being established as the same offense. That is, as was said in Wilson v. State, supra: "The rule to be deduced from the authorities is that, where the offenses charged in different indictments are so diverse as not to admit of proof that they are the same, the court may decide the issue without submitting it to a jury." And see, Wheelock v. State (Tex. Crim. App.), 38 S. W. Rep., 182. It is further held by the authorites in this State that there is a distinction between a conviction and an acquittal. In a case of conviction, it is held that the State

can carve but once; and, where the offense is separable—that is, when different articles are stolen at the same time belonging to different persons—the State can combine all of the articles stolen at the same time in the same indictment, or it can carve out such as it pleases, and embody in the same indictment, but a conviction will bar a subsequent prosecution for theft of any of said articles which were taken at the same time. The same principle, however, does not apply in case of acquittal; that is, if different articles are stolen at the same time and place, constituting one transaction, but they belong to different persons, if there are different indictments charging the possession and ownership in different persons, an acquittal under one indictment for theft from one person will not bar a prosecution for theft of different property, or even the same property, from another person; that is, autrefois acquit is only available in cases where the transaction is the same and the two indictments are susceptible of and must be sustained by the same proof. Autrefois convict only requires that the transaction, or the facts constituting it, be the same. See, the subject discussed in Wright v. State, 17. Tex. Crim. App., 152, and Shubert v. State, 21 Tex. Crim. App., 551. Applying the principles above stated to the case at bar: The defendants were prosecuted in the former case for theft of a horse, the property of, and from the possession of, Jim Towsen. He could not under said indictment have been convicted of the theft of a horse, the property of, and from the possession of, J. B. Ward. Under said former indictment, whenever the proof showed that the property charged in the indictment was stolen from Ward and not from Towsen, there would be a variance, and the jury would be bound to acquit. In other words, it was impossible for appellants to have been convicted of the theft of a horse the property of, and from the possession of, Ward, when the indictment charged theft of a horse the property of, and from the possession of, Towsen. So from their nature they could not be the same offense. If (as was actually the case in the present instance) two horses are taken by the same parties at the same time and place, from different owners, it might be as to one of said horses there would be some evidence of consent or quasi consent as to the taking, which would authorize an acquittal for the taking of said horse, whereas there would be no consent as to the taking of the other, but such taking was absolutely fraudulent. In such case we understand the authorities to hold, and upon good reason, that an acquittal for the taking of the first horse would not be a bar to a prosecution for the fraudulent taking of the second horse. On the other hand, if both horses are stolen at the same time and place by the same parties, from different owners, a conviction for the taking of one will bar prosecution for the taking of the other. The doctrine of carving applies, and the State will not be permitted to punish twice for the same offense. In this case we are not apprised what were the circumstances attending the acquittal of the defendants for the taking of the horse of Towsen; but, having been acquitted for the

taking of said horse, it is not a bar to a prosecution for the taking of another horse from the possession of another owner, though at the same time and place; and the two indictments showing distinct offenses, so diverse as not to admit proof that they are for the same offense, the court did not err in sustaining the motion of the State to strike out the plea of former acquittal. Appellants assign as error the action of the court in overruling their motion for a continuance. The motion was predicated on the absence of Jesse Wood and Ben Irwin. They proposed to prove by said Wood that the defendants bore a good reputation in the neighborhood where they lived for honesty. Other witnesses testified to this fact, and it is not shown in the application that still others were not accessible by whom their good character could be proved. Something else besides the mere fact that absent witnesses would prove the good character of a defendant for honesty and fair dealing must be shown before a motion for a continuance will be granted for such absent witness. It is also stated that it was proposed to prove by the witness, Wood, that he saw said parties on the evening of the alleged theft (which was committed at night) with an order to get some whiskey, and that they were very much under the influence of liquor when they started. In our opinion, this proof would not have added anything to that already in the case. The fact that said parties were drinking that night was abundantly shown, but, as we will hereafter show, no amount of such evidence would have availed the appellants. · It was also proposed to prove by the witness, Wood, that he had a conversation with the main State's witness a few days after the alleged theft, and that said witness stated to said Wood, when they first arrested said defendants, "that defendants stated that they had got under the influence of liquor, and that they did not know whose horses they were; that they did not have any intention of taking them, and converting them to their own use; that they did not know when they came into possession of said horses; that said defendants each gave their proper names to said witness at the time, and stated that they came to Kaufman the night before, and got 'tight'; that the horses belonged to somebody near Kemp, but they did not know whom." It is sufficient answer to this to state that the name of the main State witness who made this statement to Wood is not shown. Furthermore, it is not shown that any predicate was laid with said State witness with reference to introducing said testimony. If said evidence was competent at all, it could have been offered on cross-examination or by the defendants making said witness their own. The witness, if he had been examined and said testimony had been obtained might have stated what defendants told him, and might have admitted that they made the statement in question to him; or if he had denied the same, and said testimony was material he might have been contradicted upon it. Appellants also proposed to prove by the witness Irwin that he was in Kemp on the night of the alleged taking of the horses in question, and that he heard a conversation near the back

end of Jessie Moore's store, near Strauss' blacksmith shop, in said town of Kemp; that said conversation took place between said defendants and some other boys, whom he did not know; that said boys told defendants that they would let them have their horses to ride if they would go to Kaufman after whiskey. These same facts were proved by several other witnesses, but it is not stated by this witness, any more than the others, that the horses in question were pointed out by the stranger boys to these defendants; and it occurs to us as a little singular that this conversation was heard by several witnesses, and yet the boys whom it is assumed gave this permission were stranger boys to all of the witnesses, and that by none of them was it proposed to be shown that the horses in question were pointed out to defendants by the stranger boys. We do not believe that under the circumstances, if the absent witnesses would have testified to said facts, the jury would have regarded the same as probably true, and, if they had found such conversation to be true, would have regarded it as a real defense to the charge of the theft in question. If such a conversation ever occurred, it was evidently a mere pretext. None of said witnesses, it seems, who heard the conversation, saw the horses pointed out; but one other witness, it appears, saw the defendants when they took said horses and rode off. It is a little singular that although the horses were missed that night, and the owner began an immediate search for them, yet we hear nothing as to this witness having seen this matter, or that he told any one what he saw. We do not believe, under the circumstances of this case, that the court erred in overruling the motion for a continuance, and in overruling the motion for a new trial predicated on the action of the court in overruling the continuance. The bill of exceptions as to the action of the court regarding the argument of the case does not appear to us, as recited in the bill of exceptions, to have been injurious to the appellants. In our opinion the court did not err in excluding from the jury the remarks of the witness, John Canady, at the time he saw defendants on the night in question. His remarks are not res gestæ, nor admissible in evidence. As far as the facts to which he could testify are concerned, appellants had the full benefit thereof. It is insisted by appellants that the court's charge on drunkenness was improper. Said charge is in conformity with the statute and in accordance with the decision in Evers v. State, 31 Tex. Crim. Rep., 318. But it is urged that the statute has no application to a case like this, where the essence of the crime is the intent with which the act was done, and that insanity, whether produced by drunkenness or any other cause, is a good defense to an accusation of crime. We have examined the record carefully, and we do not conceive that this is a case calling for a reinvestigation of our statute and a review of the question as laid down in Evers v. State, supra. That is, the record in this case only shows that defendants may have been drunk, but there is no testimony raising the issue of insanity, or that they were incapable, even on account of the liquor they drank

of not understanding the nature and character of the act they were about
doing.   If we concede that the evidence shows that they were drunk at
the time, it does not tend to show that they were not capable of forming
the intent to steal.   If it be conceded that being under the influence of
liquor would afford evidence of a want of intent to steal, then we might
feel called on to review the question; but this is not in accord with com-
mon experience.   Outside of the mere statements of the witnesses that
the parties appeared to be under the influence of liquor, there is no tes-
timony that they were not acting as ordinary men act under similar cir-
cumstances, who form the intent to steal and go about consummating
the act.   They took the horses at 9 or 10 o'clock at night, and instead
of going to the town of Káufman and returning, as was the pretense
under which they claimed to have taken the horses, they were found, at
daylight the next morning, some twelve or fourteen miles beyond Kauf-
man, and about twenty-five miles from their starting point, concealed in
a pasture, stealing food for their horses.   Their coats and pistols were
found concealed at some distance therefrom.   They were traveling in
the direction of the Indian Territory, as one of the defendants confessed
was their purpose, and acting just exactly as other ordinary sane men,
engaged in stealing, do, whether drunk or sober.   They were accident-
ally apprehended, else no doubt they would have successfully made their
way to the territory.   We do not think this is a case which called for
special instructions on the question of intent in connection with drunk-
enness, if even the doctrine contended for by appellants be conceded.
The confession of the defendant, G. W. Wright, introduced in evidence,
rendered it unnecessary for the court to charge as to circumstantial evi-
dence against him.   Besides, the testimony of John Canady, defend-
ants' witness, who testified that he saw the defendants take the horses,
would appear to render the charge on circumstantial evidence unneces-
sary.   On the trial the State introduced in evidence one W. F. Hender-
son, who testified that, when the defendants were brought to jail, G.
W. Wright, one of the defendants, made a statement to him, after he
had warned him that what he might say could be used against him.
Said defendant stated to him that they got the horses at Kemp the
night before, and were going with them up to the nation to pick cotton.
That this conversation took place in the absence of the other defendant,
Ellis Wright.   That afterwards Ellis Wright was brought up, and then,
in the presence of said Ellis Wright, who had not been warned at all,
defendant, G. W. Wright, repeated said conversation, making the same
statement in regard to taking the horses, and as to where they were
going, that he had previously made to him, but that said Ellis Wright
said nothing.   That G. W. Wright was not warned in Ellis Wright's
presence, and that said Ellis Wright did not know of his being warned.
Said evidence was objected to by counsel on the ground that no warning
had been given to Ellis Wright, and that the warning given to G. W.
Wright would not bind said Ellis Wright, and was not legitimate evi-

dence against him.   On this subject the court charged the jury as follows: "The confession of a defendant may be used in evidence against him if it appears that the same was freely made, without compulsion or persuasion.   A confession shall not be used against a defendant if the same was made while he was in the custody of an officer, unless it be made voluntarily, after having been first cautioned by the officer having him in custody that it may be used against him.   The jury are further instructed, if they believe from the evidence that the defendant, G. W. Wright, made any confession, tending to show he was guilty of the offense for which he is being tried, to the deputy sheriff, William Henderson, when his codefendant, Ellis Wright, was not present, they should not consider such confession for any purpose whatever, except they believe beyond a reasonable doubt that such confession was voluntarily made by him, after having been first cautioned by said officer that such confession might be used against him; and the jury are further instructed that any confession made by defendant, G. W. Wright, in the absence of his codefendant, Ellis Wright, should not be considered as evidence against said Ellis Wright.   The jury are further instructed, if they. believe from the evidence that the defendant, G. W. Wright, voluntarily made any confession which tended to establish the guilt of himself and his codefendant, Ellis Wright, of the accusation against them in this case, after he had been cautioned that the same might be used as evidence against him, and that said confession thus made (if it was) was made in the presence of Ellis Wright, and he (said Ellis Wright) did not deny the same, or if he assented to the same, then it would be the duty of the jury to take such confession (if any) into consideration, along with all other evidence in the case, in determining whether or not defendants are guilty of the offense charged against them in this case."   Evidently the court admitted the testimony complained of, to be used against Ellis Wright, in case he was present, and by his silence or otherwise acquiesced in the statement made by his codefendant, for he instructed the jury to that effect.   In Fulcher v. State, 28 Tex. Crim. App, 472, it was held incompetent to prove the appearance of the defendant after his arrest, he not having been warned.   In Gardner v. State (Tex. Crim. App.), 34 S. W. Rep., 945, it was held that the exact character of testimony here authorized to be used against Ellis Wright, to-wit: his silence when under arrest, when a question or statement was made in his presence, could not be used against him.   The Gardner case discussed the question, citing authorities, and it is needless here to do more than refer to that case.   The testimony—that is, the statement or confession—of G. W. Wright, he having been warned, was legitimate evidence against him.   If Ellis Wright, without having been warned, assented to said statement, it could not be used against him; by a stronger reason, his silence could not be used.   On account of the admission of said illegal testimony against Ellis Wright, this case must be reversed as to him.   There being no errors in the record as to G. W. Wright,

the judgment is affirmed as to him; but, for the reasons stated, it is reversed and remanded as to Ellis Wright.

*Affirmed as to G. W. Wright.*
*Reversed and Remanded as to Ellis Wright.*