### WILL OWENS v. THE STATE.

No. 2189. Decided May 29, 1901.

Motion for Rehearing Decided June 22, 1901.

**1.—Horse Theft—Evidence—Res Inter Alios.**

On a trial for horse theft, testimony of a witness to the effect that he had told the district attorney that defendant had stolen the horse and sent it by him, witness, to the Indian Territory; and testimony of deputy sheriffs that they went to the Indian Territory and got the horse, was res inter alios acta and wholly inadmissible, the defendant not being present and having no knowledge of the statements made by the witness to the district attorney, and no knowledge of the deputy sheriffs going after and getting said horse; nor was said latter testimony admissible as going to corroborate what witness had told the district attorney.

**2.—Same—Impeachment of Witness—Supporting Testimony.**

Where no assault has been made on the testimony of a witness and no evidence to impeach him, by showing contradictory statements, or otherwise, it is improper and inadmissible to allow witnesses to testify in support of the witness to hearsay evidence which is but a recapitulation of the testimony and statements of said witness. It is only where a witness, after a proper predicate, has been impeached by showing his contradictory statements, that he can be supported by witnesses introduced to show that the witness did make the same statements he has sworn prior to his testifying in the case.

**3.—Bill of Exceptions—Preparation of—Practice.**

The statutes, Code of Criminal Procedure, article 724, and Revised Statutes, articles 1360, 1365 to 1368, inclusive, prescribe fully the practice with regard to the mode, manner, preparation, signature of trial judge, and the filing of a bill of exceptions, and these rules should be observed; and if not observed, the failure to observe them, if properly presented, will be cause for reversal where the same appears to be tantamount to depriving the defendant of his exceptions:

Appeal from the District Court of Clay. Tried below before Hon. A. H. Carrigan.

Appeal from a conviction of horse theft; penalty, two years imprisonment in the penitentiary.

The opinion states the evidence fully, and no further statement is required.

*James F. Carter,* for appellant.

*R. E. Taylor,* District Attorney, and *Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of the theft of one horse, and his punishment assessed at two years confinement in the penitentiary.

The following are, in substance, the facts proved upon the trial: Tom Price, the accomplice witness, testified: That he met defendant on the streets of Henrietta, and he said he knew of a good horse that could be gotten near town; and afterwards met defendant upon the streets, and again talked about taking the horse. Witness did not want to go, but defendant told him he must go; so witness and defendant went

out to the field of prosecutor, Graves, and took his horse. Defendant put a rope around the horse's neck and led him out of the field, and put a bridle and saddle on him; that witness and defendant took down the fence and a post. Witness was requested by defendant to take the horse to Joe Earp, in the Indian Territory, which he refused to do, but finally consented, and after traveling about two days delivered the horse to Joe Earp, putting the horse in Clark's pasture. Witness says that at the time he took the horse, defendant wrote Earp a letter, but he did not know what was in it as he never read it. Harrison Schwend, deputy sheriff, came over to Baird's restaurant, where witness was working, and took witness before the district attorney, and he there told all about taking the horse; that witness helped defendant get the horse, but he made witness take the horse and ride him to the Indian Territory; that when they went down that night to get the horse defendant turned his overcoat over to witness, who took it with him; that witness left with the horse about the last of December, 1900; that he knew all about the Graves field, where the horse was, as he had worked for Whitman, south of town, three or four months prior to the time of taking the horse; that he had known Denny Swann since he had been put in jail, about the 1st of January, 1901; that about the 17th of January the officers of the jail permitted witness to carry coal up stairs to the cell occupied by Spangler and defendant; that while there witness entered into a conversation with defendant in the presence of Spangler, in which witness said: "I stated that Dennis Swann and I agreed among ourselves, in jail, to swear falsely against this defendant, in order to send him to the penitentiary. I have been tried and convicted for the theft of this horse, and given four years in the penitentiary. The district attorney, when I was brought before him by Schwend, agreed with me to be light on me, if I would furnish him sufficient evidence to convict defendant. I was to be a good man and show him that I intended to reform. I have not been a good prisoner. I tried to saw out of jail. * * * After this I tried to break jail again."

Lee Powell testified that on December 22, 1900, Dennie Swann, defendant, or some one called me by the jail. While engaged in conversation with them about different things, defendant asked witness to write a letter to Joe Carp, Cap, or Earp, or some such name, in the Territory, and tell him that he was in jail and in trouble; witness did not write the letter; that Earp is a negro and lives near Fort Sill, in the Territory. Defendant, at this time, was in jail on a charge of cattle theft with Dennis Swann.

John Graves testified that he had a horse missing about the middle of December, 1900, and recovered the horse about the 2d or 3d of January, 1901; that Winter brought the horse back and turned it over to witness; that the horse was taken without my consent, but does not know exactly when taken.

Dennis Swann testified that he had known defendant about a year. In December, 1900, after witness was placed in jail by Schwend, defend-

ant stated to him, some time in December, that he had written a letter·
and sent it by Tom Price to Joe Earp, or some such name, in the Ter-
ritory, and in the letter it was stated that defendant had sent Tom Price·
with a horse to the Territory to be delivered by Price to Joe Carp,
or Earp, or some such name; and he was to keep the horse for defendant
until he could send him some more horses. Witness knew about a horse
being sent by defendant to the Territory by Tom Price before he was
arrested for cattle theft, but did not tell it till after witness was arrested
and until he had made agreement with the district attorney to turn
State's evidence in the cattle cases; that he did not know Price until
he was put in jail. Witness was brought by the deputy sheriff to the·
district attorney's office, and there stated that if the district attorney·
would send and get Tom Price and have him brought before him, Price·
could and would tell the district attorney of a horse defendant sent,
by Price to the Territory, to Joe Carp, or some such name; and also·
of a letter defendant wrote to Joe Carp about a horse sent by Tom Price.
Defendant was not present when witness made these statements to the·
district attorney, but was under arrest and in jail. Witness had been.
in jail several months under a charge of cattle theft. He would not say
whether he was guilty or not, as it might criminate him. Witness·
agreed with the district attorney, if he would give him only two years.
in the penitentiary, he would testify against defendant in the cattle·
cases; and was to turn State's evidence against defendant for two years.
in the penitentiary.

Tom Cook testified that he went to the Territory, near Fort Sill, to·
old man Clark's, and identified and got the horse that belonged to·
Graves, prosecutor, and the one defendant is alleged to have stolen;
brought it back and turned it over to Winter, who carried and delivered
it to Graves. Turner and witness were informed by the officers that.
the Graves horse was in the Indian Territory, and that Joe Earp, a
yellow negro, had it. When witness got the horse and brought it back
and delivered it to Winter for Graves, defendant was under arrest and
in jail and has been ever since. Tanner corroborated the testimony of·
the · witness Cook.

Will Ozee, for defendant, testified that defendant had been in witness'·
gambling house every night from the 10th to the 19th of December,.
when he was arrested and put in jail on a charge of theft of cattle with
Dennis Swann. Various witnesses testified to the general bad repu--
tation of Dennis Swann.

Joe Earp, by deposition, testified for defendant, in substance, that.
accomplice Price brought a horse to where witness was living in the Terri-
tory. He brought no letter from defendant, nor did he state to witness
that defendant had anything whatever to do with the horse. He describes.
a stocking-footed mare, which suits the description given by the other
witnesses of the horse taken from the· prosecutor, Graves.

Deputy Sheriff Schwend testified that he knew Tom Price, Dennis
Swann, and defendant. Witness carried Dennie Swann about the last·

of December, 1900, before the district attorney, Taylor, and said Swann there stated that defendant had told him that he (defendant) had sent TomPrice to the Indian Territory with a horse to Joe Earp, or some such name. That defendant had written a letter to Earp, sent it by Tom Price to Earp in the Territory. That, if the district attorney would send for Tom Price, he would tell him all about it. After Swann had made this staement to the district attorney, witness went over to Beard's and got Tom Price, brought him before the district attorney, and he there informed the district attorney, in the presence of the justice of the peace, Patterson, Featherstone, and witness, as to where the horse was, and witness informed Cook and Tanner thereof, and they went after the horse. Witness arrested Tom Price on December 28th, and placed him in the cell with Dennie Swann.

There are various matters attempted to be set up by bills of exception to the foregoing testimony, but we can not pass upon them in view of the qualification of the court thereto. However, as this judgment must be reversed, we deem it necessary to pass upon one of the questions. The testimony of the witnesses Cook and Tanner as to their going to the Indian Territory, and getting the horse, and turning the same over to prosecutor, Graves, was clearly res inter alios acta; no corroboration, in the absence of defendant, who was then in jail, and knowledge of which statement was not brought home to defendant at the time; and under the rules of law the same was not admissible. Byrd v. State, 26 Texas Crim. App., 374; Wright v. State, 37 Texas Crim. Rep., 627; Barry v. State, 37 Texas Crim. Rep., 302; Roberts v. State (Texas Crim. App.), 47 S. W. Rep., 358.

In bill of exceptions number 4 appellant complains of the following matter: "While the State's witness, H. H. Schwend, deputy sheriff, was upon the stand, the said witness was permitted, over objections of defendant, to testify in his examination in chief to the following facts, to wit: 'About the last of December, 1900, I carried Dennie Swann from the jail over to the county attorney's office in the courthouse, before R. E. Taylor, the district attorney. Dennie Swann then and there stated to the district attorney that defendant told him that he (defendant) had sent Tom Price to the Indian Territory with a horse, to Joe Camp, or some such a name, and that defendant had written a letter to Joe Carp, or Earp, and sent it by Tom Price; and that in the letter it was stated that he (defendant) sent a horse by Tom Price to Joe Earp, in the Territory; and, if the district attorney would send for Tom Price, he would tell him all about it. After Dennis Swann had made this statement to the district attorney, I went over to C. W. Beard's, across the street from the courthouse, and got Tom Price, and brought him before the district attorney in the county attorney's office. Tom Price then informed the district attorney in the presence of C. B. Patterson, the justice of the peace, W. H. Featherstone, and myself, as to where the horse was, and I informed Tom Cook and Harry Tanner as to where the horse was, and they went and got it. I arrested Tom Price

December 28, 1900, and a warrant was issued for him the next day.  I
had already arrested defendant.  I arrested him on or about December
19, 1900.  At the time Dennis Swann and Tom Price made this state-
ment, defendant was under arrest, and in jail, and was not present.'
And defendant at the time said testimony was offered, objected to all
of said testimony for the following reasons, to wit:  Because the same
was not made in the presence and hearing of defendant, is hearsay, is res
inter alios acta, and is, therefore, not admissible against defendant.
The court overruled the objections, and permitted it to go to the jury as
evidence, and defendant excepted," etc.  Appended to this bill is the
following explanation from the trial court:  "The above bill of excep-
tions is not correct.  This witness was placed on the stand by the State
on rebuttal and my notes taken during the trial show that fact.  This
witness said, about December 21, 1900, he brought Dennie Swann, at
the latter's request from the jail to the county attorney's office; that
Dennie Swann volunteered the statement set out in this bill to the
district attorney, and that the district attorney, and no one else, asked
Dennie Swann about said facts, and no inducements were held out to
said witness Swan to get him to make said statement contained in this
bill, and he made them freely and voluntarily; that the district attor-
ney made no promises to said Swann to get this information, and prom-
ised him nothing for it.  This witness was permitted to tell what state-
ment Swann had made to the district attorney at said time, and, among
other things, that Swann said that the boy Tom Price worked for Beard's
restaurant, and could tell all about the matter detailed by him, if he
would.  I refused to permit the witness Schwend to state what Tom
Price said to the district attorney, and sustained the defendant's objec-
tion to such testimony.  I permitted this testimony of Schwend to be
introduced, showing what Swann had informed the district attorney
about what defendant had said, because it appeared that Swann told
this about five days after defendant had given him the information;
that Swann had had no opportunity to manufacture this story with Tom
Price; that Tom Price did not know Swann at this time; that on cross-
examination of Dennie Swann, defendant's counsel sought to show
and did show by Dennie Swann that he was at the time of the statement
under arrest, and in jail, charged with three separate cases of cattle
theft, and that he was arrested in Wichita Falls, prior to December 21,
1900, and made an agreement with the district attorney in Wichita
Falls to plead guilty, and receive punishment in one case, and get the
others dismissed, if said Swann would testify on the other parties
connected with the other cattle theft, and that defendant was one of the
defendants in two of the cattle cases; that witness Swann and Tom
Price had been kept together in jail since January 1, 1901, on the first
floor, and not allowed to go up and stay in the upper cells of the jail,
where defendant was, and that since they had been in jail they had had
frequent conversations about this matter, and that they were still in
jail; that on cross-examination by defendant of this witnesss Swann

he was asked to state what occurred in the district attorney's office at the time he told the district attorney about the conversation detailed, and he told what was said by him and the district attorney, and said he told the district attorney all about what he had told on the stand about what defendant told him, except as to where the conversation occurred. Defendant, on cross-examination, attempted to show by this witness Swann, that the district attorney had made him promises and held out inducements to be light on him in other cases and dismiss some cases if Swann would tell him what he did know about this case; and said Swann said that he did not remember about this, and could not say whether this was included in the agreement or not, but he thought it was not. The defendant also, on cross-examination, proved by witness Tom Price that the jailer had sent Tom Price up stairs with coal for the upper cells, where defendant was, about a month prior to April 1, 1901, and that said witness Tom Price admitted telling defendant that he (Tom Price) and Dennie Swann had put up a job on defendant, and in jail agreed to send him to the penitentiary in this case; when, in order to show the statement was not a fabrication, and that he had not been induced to make this statement with improper motive and influences, I allowed the State to show what Swann said to defendant, and what the circumstances were surrounding it, in view of the fact that it had been brought out by defendant when the witness Swann was on the stand." Then, after this explanation, the trial court prepared a long bill of exceptions, embodying in substance the foregoing explanation attached to appellant's bill.

As we understand this matter, the trial court admitted the testimony of the deputy sheriff on the ground that defendant had controverted the truth and veracity of the prosecuting witness, Swann, by proving that Tom Price had said to defendant while in jail, wherein said Price stated that he, Tom Price, and Dennie Swann had put up a job on defendant and agreed to send defendant to the penitentiary in this case. It further appears by this explanation of the court that Dennie Swann, while on the stand, was cross-examined by appellant as to what he stated to the district attorney at the time he was brought before the district attorney, and that said Swann testified, in substance, that he had made the same statements as testified by the sheriff; and the said Swann testified, in substance as did the deputy sheriff in this case. This testimony was not admissible for any purpose. We see nothing in it to indicate such an assault upon Swann's testimony as comes within the rule the trial court seems to rely upon. We understand the rule to be, "where evidence is offered to support a witness by showing that he had made similar statements shortly after the occurrence, that is not admissible as original evidence, except in case of rape and assault with intent to rape. In other cases such evidence is only admissible where, on cross-examination or otherwise, an attempt has been made to show that the witness' testimony has been recently fabricated, or that he has been induced to testify under improper influence or motives." For collation of authorities, see section 1119, White's Annotated Code Criminal

Procedure. We see no effort on the part of appellant, so far as the bill of exceptions shows, to contradict the testimony of the witness Swann as to what he stated to the district attorney. It is true, the bill shows that the State proved by Tom Price that he and the witness Swann had agreed to swear falsely against appellant. But we do not understand this to be an effort on the part of appellant to contradict what the witness Swann stated he told the district attorney. If we are correct in this, then it follows that the State should not have been permitted to introduce the deputy sheriff to testify as to hearsay testimony. The court, as we understand the bill and the explanation appended, is under the impression that, simply because appellant asked the witness Swann as to what he stated to the district attorney, in connection with the fact that defendant also asked the witness Price if he and Swann did not agree to testify falsely against appellant, lays a predicate for the introduction of the testimony of the deputy sheriff to prove that the witness had made the statement testified about, and to prove the truth of such statement. If the deputy sheriff had proposed to testify to another and different statement, where an effort is made to discredit a witness, there might be some strength in the position that the deputy sheriff's testimony would be admissible. But here the deputy sheriff simply proposed to testify to the exact statement that the State is supposed to be controverting, even conceding that defendant is controverting it. As we understand it, there is not a particle of evidence in this bill of exceptions or the record before us that defendant's counsel was controverting the fact that the witness Swann made the statement to the district attorney, as the witness Swann says he did. Then if he is not controverting that, we can not see upon what rule of law the testimony could be admitted. We understand the law to be, if a witness goes upon the stand and the opposite party asked him on cross-examination if he did not make a statement different from that he then testified to, to a certain party, which the witness denies, then under proper predicate laid the opposite party can put on an impeaching witness and prove that the testifying witness did make a contradictory statement. After this is done, then the other side can introduce statements that the witness made prior to his testimony, in line and consonance with what he testified on the trial. We have never held, nor do we know of any court that goes to the extent of holding, the above recited testimony admissible.

Counsel for appellant insists, whatever disposition is made of the case, that we should pass upon certain matters presented as to his efforts to procure bills of exception. Article 724, Code of Criminal Procedure, provides: "On the trial of any criminal action, the defendant, by himself or counsel, may tender his bill of exceptions to any decision, opinion, order, or charge of the court or other proceedings in the cause, and the judge shall sign such bill of exceptions, under the rules prescribed in civil suits, in order that such decision, opinion, order, or charge may be reviewed on appeal." Article 1360, Revised Civil Statutes, reads: "Whenever in the progress of a cause, either party is dissatisfied with

any ruling, opinion or other action of the court, he may except thereto at the time the same is made or announced, and, at his request, time shall be given to embody such exception in a written bill." Article 1365: "It shall be the duty of the party taking any bill of exceptions to reduce the same to writing, and present the same to the judge for his allowance and signature during the term, and within ten days after the conclusion of the trial." Article 1366: "It shall be the duty of the judge to submit such bill of exceptions to the adverse party or his counsel, if in attendance on the court, and if the same is found to be correct, it shall be signed by the judge without delay and filed with the clerk during the term." Article 1367: "Should the judge find such bill of exceptions to be incorrect, he shall suggest to the party, or his counsel, who drew it, such corrections as he may deem necessary therein, and if they are agreed to he shall make such corrections and sign the same and file it as provided in the preceding article." Article 1368: "Should the party not agree to such corrections, the judge shall return the bill of exceptions to him with his refusal indorsed thereon, and shall make out and sign and file with the clerk such a bill of exceptions as will, in his opinion, present the ruling of the court in that behalf as it actually occurred." We have copied these provisions of the Code of Criminal Procedure and Revised Civil Statutes, in order to emphasize the fact that trial courts should uniformly follow the letter and spirit of these articles. If it is not done, we see no way of giving defendants a fair and impartial trial under the law and Constitution of this State. We here state, once for all, that if the defendant in the exercise of due diligence has been deprived, by the action of the trial courts, of bills of exception that present the facts as they really occurred in the lower court, and such failure or refusal on the part of the trial court is made apparent to this court by affidavits, we will not hesitate to reverse the case for that cause alone. The record before us, without stating it in detail, shows a very unfortunate condition of affairs. We hope it will not be repeated.

Because the court erred in the admission of testimony as shown by the fourth bill of exceptions, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON MOTION FOR REHEARING.

BROOKS, Judge.—This case was reversed at a previous day of this term, and now comes before us on motion for rehearing. We have carefully considered the same and see no reason for changing our opinion. Our attention is called to the concluding paragraph of the original opinion, wherein it appears, by construction at least, that we indicate that the trial court had unjustly and illegally deprived appellant of bills of exception. The following is the concluding paragraph of the opinion, to wit: "The record before us, without stating it in detail, shows a very

unfortunate condition of affairs. We hope it will not be repeated." This last statement, taken in connection with the preceding portion of the opinion, could be justly construed as meaning that the trial court had deprived appellant of proper bills of exception. However, this was not in our mind at the time of writing the opinion. The "unfortunate condition of affairs" alluded to by us, as evidenced by this record, was the bills of exception have a very long explanation; then follows bills of exception in lieu of the original bill and explanation. This is what we meant by the "unfortunate condition of affairs." The trial court should have approved appellant's bill, with such qualification as appellant's counsel would have agreed to, and then have signed the same. Upon his refusal to accept the qualification of the trial court, the trial judge should prepare a bill himself, certifying to the facts as they really occurred. The record does not show that the trial court has willfully deprived appellant of bills of exception. Had it done so, we would, as indicated above, have reversed the cause on that ground alone. In comments made in the original opinion on this matter, we were simply striving to lay down a correct rule for the guidance of trial courts in this matter.

*Motion overruled.*