**Helen Louise IGLEHART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 229–91.**

Court of Criminal Appeals of Texas, En Banc.

June 24, 1992.

Roger D. Shipman, Denton, for appellant.

Jerry Cobb, Former Dist. Atty., Gwinda Burns, Ronald T. Wilson, Asst. Dist. Attys., Denton, Robert Huttash, State's Atty. and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant, Helen Louise Iglehart, was indicted for felony theft. Tex.Penal Code § 31.03. Appellant sought a writ of habeas corpus in the trial court, asserting former jeopardy for the crime alleged in the indictment. The trial court held a hearing on appellant's claim and subsequently denied the relief sought. Appellant appealed the denial of habeas relief, and the Fort Worth Court of Appeals reversed, ordering the indictment dismissed and appellant discharged from custody. *Ex Parte Iglehart*, 802 S.W.2d 351 (Tex.App.—Fort Worth 1990). We granted the State's petition for discretionary review in accordance with Tex.R.App.Pro. 200(c)(3), (4) and (6).[1] We will reverse the judgment of the court of appeals.

The essential facts of this case are undisputed. On January 8, 1990, the home of Robert LaVaye, in Flower Mound, Texas, was burglarized. The items taken included a pistol, typewriter, fox-fur coat and three pieces of stereo equipment. Robert was the record owner of the pistol and typewriter, while his daughter, Valerie LaVaye, was the record owner of the fur coat and the stereo equipment. At the time of the theft, Valerie did not reside at the residence of her father. Both Robert and Valerie filed separate complaints regarding the theft of their respective property. However, Robert then filed a claim under his homeowner's insurance policy that requested reimbursement for all of the stolen items. Robert's insurance company concluded that the homeowner's policy covered all the items stolen from his residence.

On February 7, 1990, appellant was charged by information with the misdemeanor theft of Robert's pistol and typewriter.[2] On February 10, 1990, appellant was indicted for the felony theft of Valerie's fur coat and stereo equipment.[3] On April 10, 1990, appellant pleaded nolo contendere to the misdemeanor theft charge. The trial court found her guilty and she was sentenced to forty days confinement in the Denton County Jail. On April 18, 1990, appellant filed an application for writ of habeas corpus with the district court. In her application, appellant asserted the felo-

---

1. The State's petition for discretionary review was granted on the following questions:

    1. Does an insurance company have the authority to determine, by issuing a statement concerning its policy's coverage for stolen property, whether a defendant has been successively prosecuted for the same offense pursuant to the double jeopardy clause?
    2. Does the double jeopardy clause prohibit successive prosecutions for the theft of property X from owner A, and the theft of property Y from owner B, where the thefts occurred in the same transaction?
    3. Did *Grady v. Corbin* "overrule" this Court's opinions in *Ex Parte Rathmell, Spradling v. State,* and *Phillips v. State,* which teach that where a defendant's conduct harms multiple victims, that defendant can be successively prosecuted for his offenses against each victim?
    4. Does Tex. Penal Code § 1.07(a)(24)'s definition of "owner establish a hierarchy of ownership which prohibits the State from alleging ownership in the title "owner" of the property where another person is in possession of the property?

2. The misdemeanor information read in relevant part:

[T]hat HELEN LOUISE IGLEHART, who is hereinafter styled defendant, on or about the 8th day of January, A.D., 1990, and before the making and filing of this Information, in the County of Denton of the State of Texas, did then and there intentionally appropriate, by acquiring and otherwise exercising control over property, to wit: one (1) pistol and one (1) typewriter, of the value of $200.00 or more, but less than $750.00 from the owner, Robert C; LaVaye, without the effective consent of the owner and with intent to deprive the owner of the property....

3. The felony indictment read in relevant part:

[T]hat HELEN LOUISE IGLEHART, who is hereinafter styled defendant, on or about the 8th day of January, A.D., 1990, and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there intentionally appropriate, by acquiring and otherwise exercising control over, property, to wit: one (1) fox coat, one (1) stereo receiver, one (1) cassette player and one (1) equalizer of the value of at least $750 but less than $20,000 from the owner, Valerie LaVaye, without the effective consent of the owner, and with intent to deprive the owner of the property....

ny theft prosecution would constitute double jeopardy, as prohibited by the double jeopardy clause of the Fifth Amendment to the United States Constitution. After conducting a hearing on appellant's application, the trial court denied her requested relief.

On appeal to the Fort Worth Court of Appeals, appellant's sole point of error was that "the double jeopardy clause ... prevents her subsequent prosecution for items stolen from Valerie LaVaye after [she] received a misdemeanor conviction for items stolen from Robert LaVaye during the same criminal act." *Ex Parte Iglehart*, 802 S.W.2d at 352–53. The court of appeals found that, under the facts of this case, only one "owner" was deprived of property. Consequently, both prosecutions comprised but one "offense." The court of appeals' conclusion was premised on several factors. First, the court cited § 1.07(a)(24) of the Penal Code, which defines "owner" as "a person who had title to the property, possession of the property, whether lawful or not, or a greater right to the possession of the property than the actor." Second, the court of appeals noted that it was the position of Robert's insurance company that all of the property stolen from his residence was considered his property for purposes of recovery under the homeowner's policy. The court of appeals then held:

> Under the facts of the instant case and under the definition of "owner" set out by § 1.07 of the Texas Penal Code, Robert LaVaye should be treated as the "owner" of all of the items taken from his home on January 8, 1990. Since only one "owner" was deprived of his property during applicant's criminal act, only one offense was committed.

*Ex Parte Iglehart*, 802 S.W.2d at 353.

In reaching its conclusion, the court of appeals cited *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990), for the proposition that, "The Double Jeopardy Clause bars a subsequent prosecution, if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Ex Parte Iglehart*, 802 S.W.2d at 353. The court of appeals also cited § 31.09 of the Penal Code, which provides: "When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense."

Based on the foregoing, the court of appeals found that there was only one "owner" and, therefore, one offense under § 31.03. Thus, that court held:

> Prosecution under the subsequent felony indictment would require proof of an unlawful appropriation of all of the property taken with intent to deprive the owner of such property, thus proving the very conduct that constituted the offense for which applicant has already been prosecuted. Since applicant has already received a conviction for theft against Robert LaVaye, we cannot properly allow her to be prosecuted once more for this same offense.

Id.

In its brief to this Court, the State argues that the court of appeals erred in its double jeopardy analysis. First, the State avers that the court of appeals erroneously relied on the position taken by Robert LaVaye's insurance company that he was the "owner" of all of the property stolen from his premises. The State contends that this position was irrelevant to the court of appeals' resolution of this case. Second, the State argues that the court of appeals opinion is in direct conflict with previous cases from this Court, holding that it is not violative of the double jeopardy clause to prosecute successively a defendant for more than one crime arising out of a single course of conduct when the criminal conduct affects two different victims. Third, the State argues that the court of appeals misconstrued *Grady v. Corbin*, 110 S.Ct. 2084. Fourth and finally, the State asserts that the court of appeals misconstrued § 1.07(a)(24) by creating a "hierarchy of

ownership", in violation of the plain language of the statute and without any supporting authority.

In response, appellant asserts that the court of appeals correctly applied the *Grady* double jeopardy analysis to the facts of the instant case. Appellant argues that the cases cited by the State are distinguishable from the instant case, in that the cited cases dealt with multiple victims. Appellant contends that here there was only one victim in reality—Robert LaVaye—since he was the "owner" of all of the stolen property. Appellant further asserts that the State had the option of consolidating all the thefts into a single offense and charging appellant with that one crime, but, "[f]or whatever reason, be it mistake, miscommunication, or separation of duties amongst the various officials of the Denton County Attorney's Office, the State charged two offenses from the same conduct." As a final argument, appellant directs this Court to a line of Texas cases holding that a theft from multiple owners must be construed as only one offense, if such theft occurs at one time and at one place.

## I.

We will first address the court of appeals holding that because there was only one "owner" of the stolen property, appellant committed but one offense. We find that the court of appeals was incorrect, both in its reliance on the position taken by Robert LaVaye's insurance company and in its construction of § 1.07(a)(24) of the Penal Code.

As regards the court of appeals' reliance on the insurance company's position that Robert LaVaye was the "owner" of the stolen property for purposes of his homeowner's insurance policy, the court of appeals cites no authority in its opinion for this proposition. Moreover, our own independent research has failed to uncover any statute, case or other persuasive authority capable of supporting the position taken by the court of appeals. An insurance policy, in essence, constitutes an agreement between insurer and insured, and is governed by various civil law doctrines, most of which are grounded in contract law. We do not presume to pass on the extent to which an insurer's policy statement would be of merit in resolving an insurance contract dispute; however, we can confidently say that it has no relevance to the criminal jurisprudence of this State.

We also find that the court of appeals' construction of § 1.07(a)(24),[4] is flawed. When construing a statute, a court must focus on the literal text of the statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). When the literal text of a statute is clear, the court must give effect to the plain meaning of such text. *Id.* It is apparent to this Court that the text of Subsection (a)(24) plainly defines an "owner" of property as either of three things: (1) a title owner, (2) a possessor, or (3) one with a greater right to possession than the actor. The use of the disjunctive in the statute patently indicates that whenever "owner" is used in the Penal Code, it may be construed to encompass any of the statutory definitions, unless otherwise specifically provided for elsewhere. Thus, we hold that the State was correct in asserting that Valerie—as title owner of the fur coat and stereo equipment—was an "owner" of such property under Penal Code § 31.03. Having determined that there were two "owners" of stolen property in the instant case, thereby effectively negating the analytical underpinnings of the court of appeals' holding, we turn to the substantive double jeopardy questions presented in this case.

## II.

The double jeopardy clause of the *Fifth Amendment* to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This provision is applicable to the several States through the Fourteenth Amendment. See, e.g., *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct.

---

**4.** Subsection (a)(24) defines owner as: "a person who has title to the property, possession of the property, whether lawful or not, *or* a greater right to possession of the property than the actor."

2221, 2225, 53 L.Ed.2d 187 (1977). It is well-settled that the double jeopardy clause embodies three essential guarantees: (1) it protects against a successive prosecution for the "same offense" after acquittal, (2) it protects against a successive prosecution for the "same offense" after conviction, and (3) it protects against multiple punishments for the "same offense." *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2077, 23 L.Ed.2d 656 (1969). This case implicates the latter two of these guarantees.

■ The first step in our double jeopardy analysis requires us to decide, as a matter of statutory interpretation, whether appellant's conduct constituted more than one offense. This preliminary determination is necessary because, although this Court is bound by decisions from the United States Supreme Court in interpreting the scope of the double jeopardy clause of the United States Constitution, the determination of what constitutes an "offense" is largely a matter of state law: "The Legislature has the power to establish and define crimes [and 'f]ew, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses.'" *Spradling v. State*, 773 S.W.2d 553 (Tex.Cr.App.1989), citing *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). If we determine as a matter of statutory construction that appellant's conduct comprises but a single offense, our inquiry is ended, as a successive prosecution for the same offense after appellant's earlier conviction would be a prima facie violation of the double jeopardy clause. See *North Carolina v. Pearce*, supra.

■ In construing § 31.03, we must attempt to give effect to the will of the Legislature: "[W]hether appellant's particular course of conduct involved one or more distinct 'offenses' ... depends entirely on legislative intent and not on principles of double jeopardy." *Spradling v. State*, 773 S.W.2d at 556. In seeking to effectuate the intent of the Legislature, we look to the literal text of Section 31.03 of the Texas Penal Code, which provides in relevant part: A person commits *an offense* if he unlawfully appropriates property with intent to deprive *the owner* of property. (Emphasis supplied). It is clear from the language used in Section 31.03 that the Legislature intended an offense to be completed under that section when a person unlawfully appropriates property with the intent to deprive *the owner* of said property.[5] As discussed above, there are two "owners" in the instant case; thus, appellant has committed two distinct offenses— notwithstanding that both are violations of a single statute.[6]

### III.

■ Having determined that appellant's conduct comprised two statutorily defined "offenses", and therefore was not patently violative of the double jeopardy clause, we must now decide whether the two offenses at issue are sufficiently similar to invoke the constitutional protections afforded by the double jeopardy clause. In *Grady v. Corbin*, 110 S.Ct. 2084, the Supreme Court made clear that the traditional Blockburger test remains the first step in the double jeopardy analysis. See *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the Blockburger test, where the same act or transaction

5. Because we find the plain language of the theft statute to be clear and unambiguous, we find the dissent's reliance on *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), to be misplaced. There being no reasonable ambiguity, the rule of lenity embraced in *Bell* and the other cases cited by the dissent is inapposite to the instant case.

6. As we stated in *Ex Parte Rathmell*, 717 S.W.2d 33 (Tex.Cr.App.1986), quoting *Sanabria*, supra: each such [offense of a single statute] constitutes a separate "allowable unit of prosecution."

See also, *Phillips v. State*, 787 S.W.2d 391 (Tex. Cr.App.1990) (holding that the literal language of Tex. Penal Code § 22.02(a)(1) allowed for successive prosecutions for multiple aggravated assaults occurring in a single course of conduct.); *Spradling v. State*, 773 S.W.2d 553 (Tex. Cr.App.1991) (interpreting Tex.Rev.Civ.Stat. 6701d §§ 38 and 40 as allowing successive prosecutions where an accused failed to stop and render aid to multiple victims of a single automobile accident).

violates two distinct statutory provisions (or, as here, violates one statutory provision twice), a subsequent prosecution is not barred by the double jeopardy clause if each statutory provision requires proof of a fact that the other does not. The Blockburger Test focuses on the proof necessary to establish the statutory elements of each offense, rather than the actual evidence that will be presented at trial. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980).

In *Grady v. Corbin*, 110 S.Ct. at 2093, the Court expanded on the Blockburger test, by adding a "same conduct" prong to its double jeopardy analysis:

> Thus, a subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in *Vitale*, the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

In our recent decision in *Ex Parte Ramos*, 806 S.W.2d 845, 847 (Tex.Cr.App.1991) we set forth the standard to be used in conducting the "same conduct" analysis required by *Grady v. Corbin*, 110 S.Ct. 2084.

> [W]e must look at the underlying conduct in question to determine whether: (1) this is conduct constituting an offense (hence, "criminal conduct"); (2) the defendant has already been prosecuted for this offense; and (3) this "criminal conduct" will be used to establish an *essential element* of the offense charged at the subsequent prosecution. Only if the conduct meets all three parts of this test will the latter prosecution be barred by double jeopardy. In this inquiry, the focus is on the conduct itself, not how the State proves the conduct.

7. The fact that all of the stolen items were taken from the home of Robert LaVaye during a single course of criminal conduct does not alter our holding, as the Supreme Court has made clear that a mere overlap in evidence, alone, does not implicate jeopardy concerns:

## IV.

Applying the law, as set forth in the preceding section, to the facts of the case before us, we first hold that the felony prosecution brought in the instant case clearly does not violate jeopardy under *Blockburger*. The misdemeanor theft prosecution required proof that appellant appropriated a typewriter and pistol with the intent to deprive the owner, Robert LaVaye, of said property; the felony theft prosecution would require proof that appellant appropriated a fur coat and certain stereo equipment with the intent to deprive the owner, Valerie LaVaye, of said property. Each offense requires the State to prove facts not essential to the other prosecution, namely the items stolen and the ownership thereof. We agree with the State's assertion in its brief that the theft from Valerie LaVaye could be successfully prosecuted without the need to prove that her father's separate property was taken during the same transaction.

Second, we hold that the felony prosecution satisfies the second part of the *Grady v. Corbin* analysis, in that the State will not be required to prove conduct constituting an offense for which appellant has been prosecuted, in order to successfully prove up the felony prosecution. The conduct proved in the misdemeanor theft prosecution was the unlawful appropriation of certain items belonging to Robert LaVaye. The conduct to be proven in the pending felony prosecution is the unlawful appropriation of certain other items belonging to Valerie LaVaye. Because in proving the essential elements of the felony theft offense, the State will not need to rely on proof of conduct constituting the misdemeanor theft prosecution, the felony prosecution is not violative of the double jeopardy clause, as analyzed in *Grady v. Corbin*, 110 S.Ct. 2084.[7]

This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the

Based on the foregoing, the judgment of the court of appeals is reversed, and the relief requested by appellant is denied. We remand this case to the trial court for action consistent with this opinion.

MALONEY, J., dissents.

CLINTON, Judge, dissenting.

This cause represents one of the few cases to reach the Court since the demise of the carving doctrine in *Ex Parte McWilliams*, 634 S.W.2d 815 (Tex.Cr.App.1982) (Opinion on State's motion for rehearing), that calls upon us to decide the number of allowable units of prosecution that may be derived from a single transaction in which more than one victim is involved. The Court today repeats mistakes it made in its first treatment of this issue in *Ex Parte Rathmell*, 717 S.W.2d 33 (Tex.Cr.App. 1986). I therefore dissent.

### I.

The carving doctrine was a substantive jeopardy principle "which allow[ed] the prosecutor to carve as large an offense out of a single transaction as he can, yet he must cut only once." *Simco v. The State*, 9 Tex.App. 338, at 349 (1880). Under the carving doctrine the outcome of this case would be clear, for the doctrine originated and evolved in factual settings analytically indistinguishable from the one at bar. See, e.g., *Wilson v. The State*, 45 Tex. 76 (1876); *Quitzow v. The State*, 1 Tex.App. 47 (1876); *Addison v. The State*, 3 Tex.App. 40 (1877); *Hudson v. The State*, 9 Tex.App. 151 (1880); *Simco v. The State*, supra; *Wright v. The State*, 17 Tex.App. 152 (1884); *Wright v. State*, 37 Tex.Cr.R. 627, 40 S.W. 491 (1897); *Davidson v. State*, 40 Tex.Cr.R. 285, 49 S.W. 372 (1899); *Ratcliff v. State*, 118 Tex.Cr.R. 616, 38 S.W.2d 326 (1931). As long as the carving doctrine was in vogue, it was this Court that decided the question of allowable units of prosecution for theft, as a matter of substantive jeopardy law, according to when one "transaction" was completed and another had begun.[1]

The carving doctrine was abandoned in 1982 in *Ex Parte McWilliams*, supra. Since that time we have continued to insist, of course, that constitutional double jeopardy protections prohibit multiple prosecutions for the "same" offense. However, under post-*McWilliams* jeopardy analysis, the question of what constitutes the "same" offense, and of what are "allowable units of prosecution," is no longer purely a substantive jeopardy question, as it was under the carving doctrine. As the majority discerns, the question today is largely one of statutory construction.

government from introducing that same evidence in a subsequent proceeding. *Grady v. Corbin*, 110 S.Ct. at 2093; see also, *United States v. Felix*, — U.S. —, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).

The dissent opines that our opinion will "allow successive prosecutions under *every* available choice." We disagree with the dissent's intimation that we have afforded the State carte blanche to engage in interminable prosecutions. Our opinion merely permits the State to successively prosecute a defendant for the discrete number of items stolen, asserting the requisite ownership in those items as permitted by law. The State is not, however, free to successively prosecute for the same *conduct* by merely alleging ownership in different individuals, as such prosecutions would violate the double jeopardy clause. Thus, by way of illustration, had the State prosecuted appellant for theft of the fur coat from Robert LaVaye (as possessor of the property), it could not have successively prosecuted appellant for the theft of the fur coat from Valerie LaVaye (as title owner of the property). Because this would have constituted multiple prosecutions for the *same conduct* under *Grady v. Corbin*, inter alia, it would have been jeopardy barred.

1. See, e.g., *Hudson v. The State*, supra, at 156–57, wherein the Court of Appeals took pains to clarify the parameters of the carving doctrine in a multiple theft context, *viz:*

"But we must not be understood as holding that different articles taken from different persons and from different places, as from different rooms of a house occupied by different persons, would necessarily be one transaction; but, on the contrary, that property thus situated would, on proper averments and proof, support different prosecutions. For example, if a thief should enter the room of one lodger at a hotel, and should there perpetrate a theft, and should then pass to the room of another lodger and there commit another theft, these would be different thefts, and each might be prosecuted separately, and a conviction or an acquittal for the one would be no bar to the prosecution for the other."

*Spradling v. State,* 773 S.W.2d 553 (Tex. Cr.App.1989). Whether conduct constitutes one or more violations of a statute under current jeopardy analysis depends upon how the Legislature has defined the offense. See *Sanabria v. United States,* 437 U.S. 54, at 69–70, 98 S.Ct. 2170, at 2181–82, 57 L.Ed.2d 43, at 57 (1978). Therefore, whether a single act or course of conduct that adversely affects more than one individual justifies more than one prosecution—whether it is more than one offense—is a question to be addressed in the first instance by the Legislature. This Court's role now is to discern what the Legislature has provided with respect to allowable units of prosecution, if in fact it has provided anything at all.

Here, as was true in *Rathmell* and *Spradling,* the tests announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), are inapposite. Those tests determine when jeopardy will and will not permit multiple prosecutions where two distinct statutes are violated by the same conduct. Here, as in *Ex Parte Rathmell,* supra, the issue is whether double jeopardy is violated when an accused is prosecuted more than once under the same statutory provision. The root question is whether the Legislature intended as many prosecutions as there are "victims"—or, as the majority holds today, as many prosecutions as there are "owners." I believed in *Rathmell* with respect to the involuntary manslaughter statute, as I believe today with respect to the theft statute, that the majority has contrived a legislative intent where none may justifiably be found.

## II.

To begin with, as a purely historical matter it is anomalous to attribute any intention on the part of the Legislature even to have addressed the question of multiple units of prosecution from a single theft transaction in 1974, when the new Penal Code was promulgated. At that time carving was still extant. To hold that the Legislature meant to authorize multiple theft prosecutions from a single transaction is to presume it intended what this Court had unequivocally declared unconstitutional as violative of state and federal jeopardy provisions. Under former Article 5429b–2, § 3.01, V.A.C.S., now V.T.C.A. Government Code, § 311.021, "[i]n enacting a statute, it is presumed that ... compliance with the constitutions of this state and the United States is intended[.]" That this Court subsequently changed its approach to substantive jeopardy analysis in *McWilliams* does not alter the fact that at the time the new Penal Code was "enacted," the Legislature, aware of this Court's carving caselaw, would not have considered itself at liberty to allow more than one conviction from a single theft transaction. Under the circumstances we would do well not to attribute any legislative intent at all *vis-a-vis* allowable units of prosecution.

Nevertheless, the majority today finds indicia of legislative intent in the definition of "owner" found in V.T.C.A. Penal Code, § 1.07(a)(24). Its approach is reminiscent of that in *Ex Parte Rathmell,* supra, in which the Court found some significance in the phrase "an individual" in the involuntary manslaughter statute. I cannot subscribe to this kind of invention.

In *Ex Parte Rathmell,* supra, the applicant, driving while intoxicated, struck another car, causing two deaths. A bare majority of the Court observed that "the Legislature has determined and intends that the offense of involuntary manslaughter (as defined in [V.T.C.A. Penal Code,] Section 19.05(a)(2) [ ...]) is completed with the death of a single individual." 717 S.W.2d at 35. Because the involuntary manslaughter statute makes it an offense to, *inter alia,* cause the death of "an individual," the majority concluded, the Legislature must have intended an allowable unit of prosecution for each "individual" whose death was caused, irrespective of the severability of the conduct which caused the deaths. The majority bolstered its conclusion by citing a host of decisions from other jurisdictions—as if foreign jurisdictions had some authority or aptitude to construe the intent of the Texas Legislature!

Today the majority holds, similarly, that the prosecutor can prosecute as many discrete offenses as he can identify "owners" of property taken, under § 1.07(a)(24), supra. Indeed, it is a logical extension of the majority's holding today, and a more perfect analog to *Rathmell*, to say that a prosecutor could prosecute as many "thefts" for the appropriation of any given property as he can identify "owners" of that property under the broad definition of § 1.07(a)(24), supra. Presumably, then, the State in this cause could have prosecuted yet a third indictment, consistent with the majority opinion, alleging theft of a fur coat and stereo of which Robert LaVaye was an "owner," since he had actual possession. Surely the Legislature never contemplated such a scenario.

A simplistic response to the majority's holding—as simplistic as the approach taken in *Rathmell* itself—would be to point out that, unlike the involuntary manslaughter statute, which makes it a crime to cause the death of "an individual," the theft statute, V.T.C.A. Penal Code, § 31.03, makes it an offense to appropriate property without the effective consent of *"the* owner" and with intent to deprive *"the* owner" of the property.[2] It is arguable that use of the definite article implies the Legislature intended that the State be allowed to prove only one "owner" for each theft perpetrated, and that the number of allowable units of prosecution is not a function of the number of owners of property that can be identified under § 1.07(a)(24). But this is to do battle with *Rathmell* on its own preposterous terms. I do not believe that legislative use of such language tells us anything useful, one way or the other, about the legislative intent regarding allowable units of prosecution. Pursuant to V.T.C.A. Government Code, § 311.012(b), in construing the Penal Code we are to understand that "[t]he singular includes the plural and the plural includes the singular." I

take this to mean simply that we are to place no particular significance on the fact that in drafting a code provision the Legislature chose to use either the singular or the plural form of a word. For example, in the context of the involuntary manslaughter statute the fact that a drunk driver causes two deaths does not absolve him of criminal liability because the statute proscribes causing the death of "an individual." Conversely, had the statute proscribed causing the death of "individuals" by drunk driving, it would not be a defense to prosecution that an accused killed only one. Use of the singular rather than the plural form, or of the definite rather than an indefinite article, simply has no bearing on the question of how many units of prosecution the Legislature meant to allow.[3] *Rathmell* erred to presume it did.

I perceive no intent on the part of the Legislature that allowable units of prosecution for theft should depend upon the number of "owners" that can be identified under § 1.07(a)(24), supra. It is clear that the 1974 Penal Code defines theft more broadly than had prior penal codes, wherein theft had been "directed primarily toward interference with rights to possession[.]" Practice Commentary, 3 V.T.C.A. Penal Code, § 31.03, at 17 (1989). Article 1410, V.A.P.C. (1925), and its predecessors, defined theft as, *inter alia,* "the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding it for him[.]" Had the facts before us been prosecuted under former Article 1410, supra, the State could have alleged that the fur coat and stereo system belonged "to another," *viz:* Valerie LaVaye, and that it was taken "from the possession" of Robert LaVaye, who was "holding the same for [her.]" As to the pistol and typewriter, the State could have alleged they belonged "to another," *viz:* Robert LaVaye, and were

---

2. All emphasis supplied unless otherwise indicated.

3. Indeed, by its own methodology *Rathmell* can be proven wrong. Under V.T.C.A. Penal Code, § 6.01, "a person commits *an offense* only if he voluntarily engages in conduct, including *an act*

...." If we are to attribute significance to use of the singular form, then by this provision the Legislature has clearly indicated that there can be only one offense for every voluntary act, regardless of the multiplicity of results, e.g., the number of deaths caused thereby.

taken "from his possession[.]" Alternatively, the State could have alleged that Robert LaVaye was possessor and "owner" of all the property, pursuant to Article 21.08, V.A.C.C.P., and its predecessors, which have provided at least since 1879 that "ownership ... may be alleged to be in either" the title owner or one in possession of the property.[4] See *Bailey v. The State,* 18 Tex.App. 426 (1885). In any event, although the State could have alleged and proved the taking of all the property as a single offense, *Ratcliff v. State,* supra, it could not have "carved" out more than one without violating substantive jeopardy law in effect under the 1925 penal code.

Currently § 1.07(a)(24), supra, provides that "owner means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." The effect of this more expansive definition is "that the new theft offense protects a deprivation of another's title in the property whether or not the owner possesses the property." *Practice Commentary,* supra. Thus, it is no longer incumbent upon the State in every case to plead and prove deprivation of a possessory interest in property to establish theft. As applied to the facts of this case, it appears the State could allege Valerie as "owner" of the fur coat and stereo system, those items of property to which she is title owner. Alternatively, the State could allege Robert as "owner" of all the property, since he was title owner of some, and, at any rate, had apparent possession—"actual care, custody, control, or management[,]" V.T.C.A. Penal Code, § 1.07(a)(28)—of all the property.[5] That the Legislature has apparently provided a *choice* of "owners" to the State under some fact scenarios,[6] however, is no indication of an intent to allow successive prosecutions under *every* available choice.[7] Considering that the Legislature would not have perceived itself to be at liberty to allow such a thing, under carving, it is strange to find it intended to. In my view the definition of "owner" is not dispositive of the question of allowable units of prosecution.[8]

---

4. Indeed, that the Legislature has long provided, and still provides, that "ownership" may be alleged "in either" a title owner or one in possession, Article 21.08, supra, is some indication it does not intend the fact of multiple ownership to be a measure of allowable units of prosecution.

5. It is at least arguable under the new Penal Code that the theory of ownership the Legislature contemplated would be applicable in a given theft prosecution depends upon the theory of "appropriation" alleged. See V.T.C.A. Penal Code, § 31.01(5). Thus, where appropriation is effectuated by transfer of title, the title owner should be alleged. Where appropriation is effectuated by acquiring or otherwise exercising control, the person in possession (or with a greater right to possession than the actor, where both have some possessory interest, see *Compton v. State,* 607 S.W.2d 246 (Tex.Cr.App.1980) (Opinion on State's motion for rehearing) (Clinton, J., concurring in part and dissenting in part)), should be alleged as owner, whether he is the title owner or another. The theory of prosecution in this cause, as alleged in the indictment, is that appellant appropriated the property by acquiring it or otherwise exercising control over it, rather than by bringing about a transfer or purported transfer of title to or other nonpossessory interest in it. By this understanding of "ownership," it would be clear the Legislature intended that Robert LaVaye be alleged as owner of all the property in this cause.

6. But see n. 5, *ante.*

7. Actually, this "choice" has always been available to the State. See *Bailey v. The State,* supra, at 433. The only difference is that specific dispossession of property need not be shown if the State alleges a title owner under § 1.07(a)(24), supra.

8. The majority belatedly insists it has not authorized successive prosecution under every identifiable owner; that instead, its "opinion merely permits the State to successively prosecute a defendant for the discrete number of items stolen, asserting the requisite ownership in those items as permitted by law." Majority Opinion at 128, n. 7. This assumes that the number of discrete items stolen defines allowable units of prosecution. But there is no more indication that the Legislature meant for the number of items stolen to determine allowable units of prosecution than that it meant for the number of "owners" to do so. Certainly the word "property" in § 31.03(a), supra, can provide no indication of legislative intent as to allowable units of prosecution. For even under a *Rathmell* analysis, "property" is at best ambiguous, inasmuch as it may refer to one discrete item of personalty, or many. The definition in § 31.01(6), supra, does not resolve the ambiguity.

## III.

What we are left with is a statute that is, at best, ambiguous as to whether the State may make the circumstance of multiple "owners" a basis for multiple prosecution. The Legislature simply has not said with any degree of clarity that the number of prosecutable thefts is a function of the number of "owners" stolen from. Nevertheless we cannot avoid answering the substantive jeopardy question. In the absence of legislative guidance, we can only devise, as a matter of decisional law, a default position. We do know that the Legislature intends nothing to be an offense that has not been defined as such. V.T.C.A. Penal Code, § 1.03(a). In view of this precept it seems to me that the appropriate default position must be that where the Legislature has failed to indicate that a single transaction involving several "victims"/"owners" be considered multiple offenses, the presumption must be it intended only one.

Of persuasive authority is the opinion of the United States Supreme Court in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). There the accused was charged with separate violations of the Mann Act, which proscribes transportation in interstate commerce of "any woman or girl" for immoral purposes. It was conceded that Bell "transported the two women on the same trip in the same vehicle." 349 U.S. at 82, 75 S.Ct. at 621, 99 L.Ed. at 909–910. The federal circuits were split on the question of how many units of prosecution Congress intended on these facts. The Government contended that the statutory language provides for multiple prosecutions; Bell argued it does not. The Supreme Court, through Justice Frankfurter, resolved the conflict thus:

"It is not to be denied that argumentative skill, as shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. * * * [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes."

349 U.S. at 83, 75 S.Ct. at 622, 99 L.Ed. at 910–11.[9] See also *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, at 221–22, 73 S.Ct. 227, at 229, 97 L.Ed. 260, at 264 (1952) ("[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.").

A like rule of statutory construction has long been recognized in Texas. Similar to current § 1.03(a), supra, provisions in for-

---

**9.** In *Spradling v. State*, supra, the defendant invoked *Bell v. United States*, supra, as the operative test for determining whether his failure to stop and render aid to two individuals whom he had struck at the same time with his car constituted one offense or two. This Court rejected this argument because *Bell* and other cases applying the principle of lenity "were not based upon the jeopardy clause of the United States Constitution[.]" 773 S.W.2d at 555. Ironically, the Court proceeded next to recognize that the jeopardy question before it is to be resolved according to legislative intent; that whether conduct violates a statute once or more than once is a question of how the Legislature has defined the offense, citing *Sanabria v. United States*, supra. On authority of *Rathmell* the Court found the intent of the Legislature clear. The statute creates a duty to "render to *any* person injured in such accident reasonable assistance." (Emphasis in *Spradling*). To the majority this signified as many allowable units of prosecution as persons injured. Of course, that signification is far from clear. *Spradling v. State*, supra (Clinton, J., dissenting). It is even less clear that the theft statute manifests a legislative intent that ownership should define allowable units of prosecution, as the majority confidently, but without explanation, assures us it does. Majority Opinion at 127, n. 5. It seems to me that demonstrably it does not. See Part II., ante. Therefore, *Bell* is hardly "inapposite."

mer penal codes have provided that "no person shall be punished for an offense which is not made penal by the plain import of the words of the law." E.g., Article 7, V.A.P.C. (1925). In this context, quoting from *United States v. Clayton*, 2 Dill. 219, 25 F.Cas. 458, the Court of Appeals in 1886 remarked:

> "the doctrine is fundamental in English and American law that there can be no constructive offenses; that, before a man can be punished, his case must be plainly and unmistakably within the statute, *and, if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused.*"

*Murray v. State*, 21 Tex.App. 620, at 633, 2 S.W. 757, at 761 (1886).[10] When constitutional protections against double jeopardy are also implicated, this Court should be even more diligent to prevent multiple prosecutions where there is doubt that "the statute embraces it." For in that context, more than just the will of the Legislature is at issue.

Because we cannot say with any assurance that the Legislature intended as many prosecutable theft offenses as there are identifiable "owners" under § 1.07(a)(24), supra, we must presume it did not intend ownership to be a measure of allowable units of prosecution.[11] The majority errs to conclude otherwise. Therefore, I respectfully dissent.

---

**10.** Emphasis in the original.

**11.** Because it is just as uncertain that the Legislature intended as many prosecutable thefts as discrete items of "property" stolen, see n. 8,

*ante,* we must likewise presume it did not intend discrete items of property to be a measure of allowable units of prosecution.