Opinion filed December 21, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed December 21, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                       Nos. 11-06-00092-CR & 11-06-00093-CR 

                                                     __________

 

            MARGARET
DEAN BERG A/K/A MARDEAN BERG, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor County,
Texas

 

                                      Trial
Court Cause Nos. 7261-D and 7262-D

 



 

                                                                   O
P I N I O N

Margaret Dean Berg a/k/a Mardean Berg was indicted
for theft[1]
and misapplication of fiduciary property.[2]  She filed petitions for writ of habeas corpus
contending that the charges were barred by double jeopardy because of a prior
acquittal.  The trial court held an
evidentiary hearing and denied Berg=s
petitions.  We affirm.  

 








                                                             I.  Background Facts

Berg was originally indicted in 2002 for
intentionally and knowingly appropriating property from Jim Taylor in a total
aggregate amount of between one and two hundred thousand dollars pursuant to
one scheme and continuing course of conduct which began on or about May 5,
2000, and continued until on or about February 16, 2001.  Berg pleaded not guilty.  She waived a jury and was tried in 2004.  The trial court found her not guilty and
entered a judgment of acquittal.

In 2005, the grand jury returned two new indictments
against Berg.  The indictments named Jim
Taylor and Bobbie Taylor different victims, but were otherwise identical.  Each alleged that Berg had intentionally and
knowingly appropriated property of the total aggregate value of two hundred
thousand dollars or more pursuant to one scheme and continuing course of
conduct beginning on or about January 9, 1998, and continuing until on or about
April 27, 2000.  Each also alleged in a
second count that, during this same period of time, Berg intentionally,
knowingly, and recklessly misapplied property that she held as a fiduciary.

Berg filed petitions for writ of habeas corpus
contending that the indictments were barred by double jeopardy because of her
previous acquittal.  The trial court held
an evidentiary hearing.  Berg established
that the checks and other documents upon which the prosecution intended to rely
had all been introduced into evidence during the 2004 trial, and she asked the
court to dismiss the 2005 indictments. 
The State answered that the 2005 indictments covered a different time
period from the original indictment and that the evidence directly attributable
to the time period covered by the 2005 indictments was offered in the 2004
trial to show intent.  The trial court
denied the petitions.

                                                                       II.  Issues

In each case, Berg challenges the trial court=s decision with one issue contending
that, because the State opted to charge her in 2002 with theft pursuant to a
single scheme and continuing course of conduct and because the State relied
upon the same evidence in the first trial that it intended to use in the
second, double jeopardy bars it from relitigating her liability.

                                                           III.  Standard of Review








In a writ of habeas corpus hearing, the burden of
proof is on the petitioner to prove its allegations by a preponderance of the
evidence.  Kniatt v. State, No.
PD-0323-05, 2006 WL 1710881 (Tex.
Crim. App. June 20, 2006); Ex parte Thomas, 906 S.W.2d 22, 24
(Tex. Crim. App. 1995).  We view the
evidence in the light most favorable to the trial court=s
ruling and accord great deference to the trial court=s
findings and conclusions.  Ex parte
Bruce, 112 S.W.3d 635, 639 (Tex. App.CFort
Worth 2003, pet. dism=d,
untimely filed). Absent a clear abuse of discretion, we accept the trial court=s decision whether to grant the relief
requested in a habeas corpus application. 
Ex parte Spaulding, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981).

                                                                    IV.  Analysis

Berg alleges that, because she was acquitted in
2004, the 2005 indictments are barred by traditional double jeopardy notions or,
alternatively, because of collateral estoppel. 
Both the United States Constitution and the Texas Constitution protect
individuals from multiple punishments for the same offense.  Montgomery v. State, 91 S.W.3d 426,
429 (Tex. App.CEastland
2002, pet. ref=d).  The Double Jeopardy Clause of the United
States Constitution provides:  A[N]or shall any person be subject for
the same offence to be twice put in jeopardy of life or limb.@ 
U.S. Const. amend. V.  The Texas Constitution states: ANo person, for the same offense, shall
be twice put in jeopardy of life or liberty, nor shall a person be again put
upon trial for the same offense, after a verdict of not guilty in a court of
competent jurisdiction.@  Tex.
Const. art. I, '
14.  

The Texas Constitution provides slightly more
expansive protection when prosecutorial misconduct prompts a defendant to seek
a mistrial.  Bauder v. State, 921
S.W.2d 696, 699 (Tex. Crim. App. 1996). 
But the two provisions provide the same level of protection for
successive prosecutions following an acquittal. 
See Ex parte Pool, 71 S.W.3d 462, 466 (Tex. App.CTyler 2002, no pet.) (the two
constitutional provisions are conceptually identical).

The starting point in any double jeopardy analysis
is the ABlockburger
test.@  This permits successive prosecutions for the
same criminal act or transaction under two statutes if each statute requires
proof of an additional fact which the other does not.  Blockburger v. United
 States, 284 U.S. 299, 304 (1932).  In the first indictment, Berg was charged
with theft.  See Tex. Pen. Code Ann. ' 31.03(a) (Vernon Supp. 2006).  In the 2005 indictments, Berg was not only
charged with theft but also with the misapplication of fiduciary property.  See Tex.
Pen. Code Ann. '
32.45 (Vernon Supp. 2006).








Section 31.03(a) requires proof that the defendant
(1) unlawfully (2) appropriated property (3) with the intent to deprive the
owner of it.  Section 32.45 requires
proof that the defendant (1) intentionally, knowingly, or recklessly (2)
misapplied property (3) that it held as a fiduciary.  Each statute contains at least one unique
element.  Consequently, the trial court
did not abuse its discretion when it held that Berg could be prosecuted for
misapplication of fiduciary property.

The 2002 indictment and the 2005 indictments rely
upon the same statutory provision for their theft allegations.  The Blockburger test, therefore, is
not applicable.  Vineyard v. State,
958 S.W.2d 834, 837 n.5 (Tex. Crim. App. 1998). 
The State argues that in this instance we must conduct the additional
analysis set out in Grady v. Corbin, 495 U.S. 508 (1990).  Grady, however, was expressly
overruled in 1993 by United States v. Dixon, 509 U.S. 688 (1993).[3]  Grady and many of the cases cited by
the State that rely upon Grady are unhelpful to our analysis.  Instead, we must determine if the alleged
conduct constitutes more than one offense under the statute. Bailey v. State,
44 S.W.3d 690 (Tex. App.CHouston
[14th Dist.] 2001), aff=d,
87 S.W.3d 122 (Tex. Crim. App. 2002).

The legislature defines whether offenses are the
same by proscribing the Aallowable
unit of prosecution@ that is
a distinguishable discrete act that is a separate violation of the
statute.  Iglehart v. State, 837
S.W.2d 122, 130 (Tex. Crim. App. 1992), disapproved on other grounds by
Bailey, 87 S.W.3d 122.  With
conduct-oriented statutes, the general rule is that each victim is the
allowable unit of prosecution.  Ex
parte Gonzalez, 147 S.W.3d 474, 477 (Tex. App.CSan
Antonio 2004, pet. dism=d,
untimely filed).

In Iglehart, the defendant was charged with
misdemeanor theft of property from one owner. 
He was later indicted for felony theft of property from a second
owner.  Both thefts arose from the same
transaction.  The court held that the
legislature intended for an offense to be complete when there was an unlawful
appropriation of property coupled with an intent to deprive each owner of their
property.  837 S.W.2d at 127.  Because the defendant stole from two owners,
the applicable statute imposed two units of prosecution.  Id. 









Berg=s
2002 indictment accused her of committing theft against Jim Taylor.  The 2005 indictment in Cause Number 7262-D
accused Berg of committing theft against Bobbie Taylor.  Berg argues that the property that forms the
basis of the 2005 indictments is owned jointly by Jim and Bobbie Taylor as
husband and wife and, therefore, that there is only one victim for purposes of
units of prosecution.[4]  Berg did not raise this issue in her
petition, did not cite any evidence to support it, and did not discuss it
during the habeas hearing.[5]  Consequently, the trial court did not abuse
its discretion by finding that Berg could be prosecuted for theft under both
indictments.

Berg=s
challenge to her prosecution for theft from Jim Taylor rests primarily upon her
contention that this is barred by collateral estoppel because the trial court
necessarily determined that she did not appropriate property from Jim Taylor
pursuant to one scheme and continuing course of conduct between 1997 and 2001.  The doctrine of collateral estoppel is
embodied within the constitutional bar against double jeopardy, but the two are
not identical.  Ex parte Watkins,
73 S.W.3d 264, 267 (Tex. Crim. App. 2002). 
Double jeopardy bars any retrial of a criminal offense.  Dixon, 509 U.S. at 695-96. Collateral
estoppel prohibits relitigating an ultimate issue of fact that has been
determined by a valid and final judgment. 
Ashe v. Swenson, 397 U.S. 436, 443 (1970). 

Application of the collateral estoppel doctrine
requires that we first determine whether the trial court determined a fact in
the 2004 trial and, if so, that we then determine how broad B in terms of time, space, and content B was the scope of its finding.  Watkins, 73 S.W.3d at 268.  Before collateral estoppel will bar
relitigation of a discrete fact, that fact must necessarily have been decided
in the defendant=s favor
in the first trial.  The mere possibility
that a fact may have been determined in the first trial is insufficient to bar
its relitigation in a second trial.  Id.  

The trial court did not elaborate on its decision
to acquit Berg.  Following the trial, the
court announced:

The file will reflect as a result of a trial held
June 12th, testimony was received.  I
have reviewed all the documents contained therein that were produced to the
Court, and I find you not guilty of the offense as alleged in the indictment.

 








I will note there is a civil suit pending.  You may well have overstepped the bounds of
your authority, but that will be decided in that civil suit.

 

The absence of a specific fact finding requires that we otherwise
determine if the acquittal necessarily involved a specific factual
determination in Berg=s
favor.

Berg=s
collateral estoppel argument relies heavily upon the Supreme Court=s decision in Ashe, 397 U.S.
436.  But in Ashe, unlike the
present case, there was only one contested issue.  Six men were robbed at gunpoint by three or four
masked gunmen.  The defendant was tried
on charges of robbing one of the six men. 
He did not dispute that the robbery had occurred exactly as alleged, but
did dispute that he was one of the gunmen. 
Because this was the only disputed issue, the defendant=s acquittal necessarily meant that the
jury believed he was not one of the gunmen and, therefore, that he could not be
prosecuted for robbing any other victim. 
Id. at 445.

Berg=s
trial involved more than one issue.  The
State introduced evidence that Berg was employed by Taylor Grain and Taylor
Investments.  For Taylor Grain her
compensation was $1,000 per month, plus 15% of the business=s net profits.  For Taylor Investments she was paid $17,000
per year, plus 4% of the business=s
net profits.  For the time period covered
by the indictment, May 2000 through February 2001, her total compensation would
have been $29,297.  However, a total of
$190,084.16 was transferred from various Taylor entities into her bank account.

Berg testified and disputed the State=s characterization of the
transactions.  She testified that Jim
Taylor=s father,
Joe Taylor, gave her money to pay other employees so that he could avoid
withholding.  She testified that $59,000
was transferred to her as a loan for a commodities transaction.  She also disputed the description of her
Taylor Grain compensation package.  She
testified that she initially received 5% of the net profits but that in 2000
this was changed to 5% of any increase in sales.








In Ashe, the Supreme Court instructed lower
courts to Aexamine
the record of a prior proceeding, taking into account the pleadings, evidence,
charge, and other relevant matter, and conclude whether a rational jury could
have grounded its verdict upon an issue other than that which the defendant
seeks to foreclose from consideration.@
Id. at 444. The trial court could have believed Berg=s testimony that her Taylor Grain
compensation package changed in 2000 from a net-profits interest to a
percentage of any sales increase or that some of the cash transfers represented
loans or compensation for other employees. These conclusions would establish
the propriety of the transactions covered by the 2002 indictment but would have
no direct impact on any other transaction. 
For example, the decision in 2000 to change Berg=s
compensation from a net-profits interest to a sales-based interest has no
bearing on her prior compensation.

Berg additionally argues that collateral estoppel
is established because she was indicted for engaging in a single scheme and
continuing course of conduct and the State introduced evidence of transactions
from 1997 through 2001.  Berg did an
admirable job of establishing at the habeas corpus hearing that the State
relied upon bank records, income tax returns, checks, and other financial
records covering 1998 through 2001 and that the State would use this same
evidence at the second trial.  Berg concludes
that the State had one full and fair opportunity to convict her and that it
violated her constitutional rights to provide the State with an opportunity to
refine its presentation in hopes of obtaining a better result.

Berg=s
concern is not without merit.  See
Arizona v. Washington, 434 U.S. 497, 503-04 (1978) (a second prosecution
may be grossly unfair because it increases the financial and emotional burden
on the accused, prolongs any period of stigmatization, and may enhance the risk
that an innocent person will be convicted). 
However, because Berg was only in jeopardy of conviction for theft
occurring during the time period covered by the 2002 indictment, double
jeopardy does not bar her prosecution for thefts allegedly occurring during
different time periods.

The State=s
intention to rely upon some or all of the same documentary evidence in a second
trial is clearly relevant, but this alone does not conclusively establish double
jeopardy because the evidence may serve different purposes in different
proceedings.  For example, in United
States v. Felix, 503 U.S. 378 (1992), the defendant was convicted in
Missouri of attempting to manufacture methamphetamine.  Id. at 380.  During the trial, the prosecution introduced
evidence that the defendant had also manufactured methamphetamine in Oklahoma
to rebut his contention that he was operating Aunder
the mistaken belief that he was working in a covert DEA operation.@ 
Id. at 381.








The defendant was then indicted in Oklahoma for
conspiracy to manufacture, possess, and distribute methamphetamine.  The government introduced much of the same
evidence at the Oklahoma trial that it used in the Missouri trial.  Id. at 381-82.  The Supreme Court rejected the argument that
the overlap in proof between the two prosecutions established a double jeopardy
violation, writing that, Ano
matter how much evidence of the Oklahoma transactions was introduced by the
Government to help show Felix=s
state of mind, he was not prosecuted in the Missouri trial for any
offense other than the Missouri attempt offense with which he was charged.@ 
Id. at 385-86.      A similar situation is present here.  During the 2004 trial, the State tendered a
summary of the cash transfers from the Taylor entities to Berg=s bank account.  When the witness was asked about her summary
for 1998, Berg=s
attorney made the following objection:

Judge, I object to any questions regarding to
that.  He=s
asking for checks that were written in 1998. 
The indictment says May 5th, 2001 until -- or, excuse me -- May 5th,
2000 until February 22nd, 2001.  Anything
other than that are extraneous offenses and they are not admissible.

 

The State agreed this was extraneous offense evidence, but
responded that it was admissible to show intent and absence of mistake.  The trial court allowed the testimony.

The admission of this evidence for a limited
purpose also limits its double jeopardy impact. 
In Ex parte Goodbread, 967 S.W.2d 859, 860 (Tex. Crim. App.
1998), the court held that, when a defendant was indicted for committing
certain acts of unlawful sexual conduct on or about a specific date, the
indictment did not create a double jeopardy bar to prosecution on subsequent
indictments with different offense dates because they were separate
offenses.  The court recognized that, if
evidence of more than one offense is admitted and a conviction for either could
be had under the indictment and if the State makes no election, double jeopardy
would preclude a subsequent prosecution. 
Id.  An election would be
some action that excludes or limits the consideration of an offense, such as
limiting the purpose for which the evidence is offered. Id. at 861
n.2.  

In Ex parte Goodman, 152 S.W.3d 67, 71-72
(Tex. Crim. App. 2004), the court held that jeopardy only attaches to the
specific crimes for which the defendant faced conviction.  In this case, the defendant was originally
indicted for committing theft on one specific date.  The State dismissed the indictment during the
trial and reindicted him for aggregated theft. 
The new indictment alleged that the defendant engaged in a single scheme
and course of conduct over a several month period of time.  The court held that this was permissible
because the initial indictment placed the defendant in jeopardy of conviction
of only one theft.  The State could not
attempt to relitigate that specific theft, but could still prosecute the
defendant for any other act of theft.








Berg distinguishes cases such as Goodbread
and Goodman by correctly noting that she was not indicted in 2002 for
specific, identifiable acts of misconduct. 
Instead, the State indicted her for one scheme and continuing course of
conduct.  Berg argues, therefore, that
any alleged misconduct was bundled into the one charge.  This is especially true, she argues, because
the State presented testimony of all possible acts of misconduct in accordance
with that one scheme and continuing course of conduct.  Tex.
Pen. Code Ann. '
31.09 (Vernon 2003) allows the State to join multiple instances of theft into a
single offense and to aggregate the value. 
The statute is permissive.  The
State is not required to aggregate the amounts of individual acts of
theft.  Dickens v. State, 981 S.W.2d
186 (Tex. Crim. App. 1998).  The 2002
indictment elects to aggregate the alleged acts of theft from May 5, 2000,
through February 16, 2001.  Because the
statute is permissive and the 2002 indictment identified a specific period of
time, the mere fact that the State alleged Berg committed one scheme and course
of conduct does not mean jeopardy attached to any transaction outside this time
period.

The trial court did not abuse its discretion when
it held that the theft allegations in the 2005 indictments were not barred by
double jeopardy.  In each case, Berg=s issue is overruled.

                                                                     V.  Holding

The trial court=s
orders are affirmed.

 

 

RICK STRANGE

JUSTICE

 

December 21, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., 

McCall,
J., and Strange, J.











[1]Cause No. 11-06-00092-CR.





[2]Cause No. 11-06-00093-CR.





[3]We note the State cited Dixon in its brief as
well.





[4]Double jeopardy protects not only against successive
prosecutions, it also protects against multiple punishments for the same
offense.  See Ex parte Rhodes, 974
S.W.2d 735, 738 (Tex. Crim. App. 1998). The only issue before us is whether
Berg can be prosecuted under the 2005 indictments.  We express no opinion on what impact, if any,
this argument might have on any permissible punishment.





[5]Berg did introduce the transcript of the 2004 trial
into evidence during her habeas hearing. 
This transcript establishes that Jim and Bobbie are married and are
partners in Taylor Investments.  That
does not foreclose the possibility that they have separate property
interest.  Therefore, we cannot say it is
sufficient to establish an abuse of discretion, particularly since this issue
was not brought to the trial court=s
attention.